CHARLES FLOYD GETTINGS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gettings v. Commissioner
Docket No. 8433-87.
United States Tax Court
T.C. Memo 1988-328; 1988 Tax Ct. Memo LEXIS 356; 55 T.C.M. (CCH) 1361; T.C.M. (RIA) 88328; July 27, 1988; As amended August 4, 1988 Charles Floyd Gettings, pro se. Steven W. LaBounty, for the respondent. COUVILLION
MEMORANDUM OPINION COUVILLION, Special Trial Judge: This case was assigned pursuant to the provisions of section 7443A(b) of the Internal Revenue Code of 1986. [1] For convenience, the findings of fact and conclusions of law have been combined in this opinion. *360 Respondent determined the following deficiencies and additions to petitioner's Federal income taxes: Additions to Tax
Year
Deficiency
Section 6653(a)(1)
Section 6653(a)(2)
1982
$ 2,343.40
$ 117.17
*
1984
$   961.88
$  48.09
*
1985
$ 3,605,66
$ 180.28
*
At trial, respondent moved to amend the answer to increase the deficiency for 1984 to $ 1,592.88, the addition to tax under section 6653(a)(1) to $ 79.64, and the addition to tax under section 6653(a)(2) to 50 percent of the interest due on the deficiency of $ 1,592.88. Numerous issues were conceded by the parties prior to an during the trial. [2] Remaining at issue are: (1) Charitable contribution deductions for 1982 in excess of an amount allowed in the notice of deficiency; (2) Fees and other expenses for preparation of petitioner's 1982 income tax return in excess of an amount allowed in the notice of deficiency; (3) Child care credit for 1982; (4) Various Schedule F, Farm Expenses, for 1984 and 1985 in excess of amounts allowed in the notice of deficiency and/or conceded by respondent at trial; (5) Moving expenses for 1984; *361 (6) Investment credit for 1984 and 1985; (7) Gain on sale of residence for 1984; (8) Schedule F, Farm Income, for 1985; and (9) The additions to tax. Some of the facts have been stipulated and are so found. The stipulation and exhibits *362 submitted therewith are made part hereof by reference. At the time the petition was filed, petitioner resided at Doniphan, Missouri. Petitioner had been employed by General Motors Corporation as a porter at its Bowling Green, Kentucky, assembly plant. During 1983, petitioner retired after 30 years service. In early 1984, he sold his home at Bowling Green, Kentucky and, in June 1984, purchased a home and approximately 20 acres at Doniphan, Missouri, where he moved and began raising cattle. His retirement benefits from General Motors approximated $ 800 per month. The determinations of respondent in a notice of deficiency, including the additions to tax involved herein, are presumed correct, and the burden of proof is on petitioner to establish that respondent's determinations are in error. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). However, with respect to any new matter raised by respondent, the burden of proof with respect to such new matter is on respondent. Rule 142(a). Therefore, with respect to the increased deficiency and additions to tax pleaded in respondent's amended answer for 1984, the burden of proof is on respondent. (1) Charitable *363 Contributions, 1982
On his 1982 income tax return, petitioner claimed the following charitable contributions: $  572.00
Church of Christ
25.00
Salvation Army, Boy Scouts, & Girl Scouts
120.00
Collections at door
916.13
2% of adjusted gross income
$ 1,633.13
Total
On audit, respondent allowed $ 10 to the Church of Christ and disallowed all other amounts for lack of substantiation. At trial, petitioner presented no receipts or canceled checks to substantiate any of the amounts at issue. He testified that all his contributions were in cash. The Court is satisfied from the record that petitioner contributed an amount to the Church of Christ in excess of that which was allowed by respondent. Bearing heavily against petitioner, "whose inexactitude is of his own making," the Court finds that petitioner's total contribution to the Church of Christ during 1982 was $ 150; therefore, the adjustment as to this item is accordingly redetermined. Cohan v Commissioner,39 F.2d 540 (2d Cir. 1930). As to all other items, respondent is sustained. (2) Tax Return Preparation Fee, 1982
On his 1982 income tax return, petitioner claimed *364 the following as an itemized deduction for preparation of his Federal and state income tax returns: $  500.00
To the preparer
18.63
Toll calls and postage
620.40
Travel
342.54
Meals and lodging
$ 1,481.57
Total
On audit, respondent allowed the $ 500 paid to the preparer, but disallowed all other amounts of lack of substantiation. At the time of filing his 1982 return, petitioner lived at Bowling Green, Kentucky. His preparer lived at St. Louis, Missouri, a distance of approximately 300 miles. Petitioner previously owned a farm at Silex, Missouri, which he sold in 1981, but a portion of the gain realized from this sale was reported on his 1982 return. The distance between Silex and St. Louis was an additional 70 miles. Petitioner testified he made six round trips to his preparer at St. Louis and to Silex, Missouri, for preparation of his tax returns, thus accounting for the $ 620.40 and $ 342.54 travel, and meals and lodging expenses itemized above. His visits to Silex, petitioner testified, were necessary to obtain information with respect to the gain realized on the sale of his Silex property. Petitioner did not explain why this information *365 was at Silex and not with his personal records at Bowling Green. The preparer testified that he had prepared petitioner's tax returns for the previous 20 years. Petitioner presented no receipts or any other documentary evidence to substantiate the amounts claimed. Section 212(3) allows, as a deduction, all the "ordinary and necessary" expenses paid or incurred during the taxable year "in connection with the determination, collection, or refund of any tax." The Court is satisfied, from the record, that petitioner incurred some travel expenses in connection with the preparation of his tax returns. Using our best judgment under Cohan v. Commissioner, supra, the Court finds petitioner is entitled to $ 150 for travel expenses. All other items as to this issue are disallowed for lack of substantiation. (3) Child Care Credit, 1982
On his 1982 income tax return, petitioner claimed a child care credit of $ 234.40, based on $ 1,200 paid for the care of his stepson. Respondent disallowed the credit for lack of substantiation. Petitioner testified that $ 1,200 was paid to the child's grandmother, for the period during the school year when school let out each *366 day until petitioner's wife returned home from work. On their 1982 joint return, petitioner reported W-2 wages of $ 1,172 earned by his wife. All payments for care of the child were in cash, and petitioner produced no receipts to evidence the payments. He acknowledged that his wife worked only part time during 1982 but could not establish the number of days she worked or the hours the child was left in the care of the grandmother. Under Section 44A(a), a credit against the tax is allowed as a percentage of employment-related expenses incurred by a taxpayer, who maintains a household which includes one ore more qualifying individuals, if such expenses are incurred to enable the taxpayer to be gainfully employed, and such expenses are for the care of the qualifying individual. Since petitioner and his wife were both gainfully employed during 1982, the Court is satisfied that some amount was expended by them for the care of petitioner's stepson, which enabled petitioner and his wife to be gainfully employed. Using our best judgment under Cohan v. Commissioner, supra, the Court estimates the child care expenses were $ 150. Petitioner, therefore, is allowed a child *367 care credit based on this amount. (4) Schedule F, Farm Expenses, 1984 and 1985
The following items, claimed as expenses on Schedule F of petitioner's 1984 and 1985 tax returns, are at issue: Claimed
Allowed
Item
On Return
by Respondent
At Issue
1984
Labor
$   914.50
$   614.50
$   300.00
Feed Purchased
$   588.08
$   536.21
$    51.87
Depreciation:
Parking Area
$    80.00
-0-
$    80.00
Driveway
$    20.00
-0-
$    20.00
5 Fruit Trees
$    18.75
-0-
$    18.75
Dog
$     4.00
-0-
$     4.00
Pond #1
$   225.00
-0-
$   225.00
Pond #2
$    75.00
-0-
$    75.00
Pond #3
$    30.00
-0-
$    30.00
General Expenses
$   104.00
-0-
$   104.00
Treats to Helpers
$   100.00
-0-
$   100.00
Postage
$    15.00
-0-
$    15.00
Misc. Supplies
$    52.00
-0-
$    52.00
Gloves
$    25.00
-0-
$    25.00
Overshoes
$    41.00
-0-
$    41.00
Rainsuit
$    25.00
-0-
$    25.00
1985:
Interest $ 1,253.14
-0-
$ 1,253.14
Repairs
$ 1,460.47
$ 1,258.94
$   201.53
Light Bulbs
$    36.00
-0-
$    36.00
Batteries
$    30.00
-0-
$    30.00
Hand Creams
$    15.00
-0-
$    15.00
Gloves
$    15.00
-0-
$    15.00
Overshoes
$    18.00
-0-
$    18.00
Office Supplies
$    12.00
-0-
$    12.00
Paper Towels
$     8.00
-0-
$     8.00
Miscellaneous
$    52.00
-0-
$    52.00
Real Estate Taxes $   118.87
$    66.43
$    52.44
Miscellaneous
$   104.00
-0-
$   104.00
*368 Section 162(a), in general, allows as a deduction all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. Under section 61(1), trade or business expenses (other than those of employees) are deductions from gross income. Section 163(a) provides a deduction for all interest paid or accrued on indebtedness, and section 164(a)(1) similarly allows a deduction for real property taxes. To the extent interest and real property taxes are not paid or incurred in a trade or business and, therefore, are not deductible under section 162 (or are not attributable to property held for the production of rents and, therefore, are not deductible under section 212), sections 163(a) and 164(a)(1), respectively, allow their deduction. Section 63(f), however, provides that such interest and taxes are itemized deductions. Under section 63(b), as to individuals, excess itemized deductions are deductions from adjusted gross income. Section 168(a) allows, in general, as a depreciation deduction, a deduction for the recovery of the unadjusted basis of tangible property used in a trade or business or held for the production of income. If an asset *369 is used in a trade or business of a self-employed taxpayer, the depreciation of that asset is allowed as a deduction from gross income under section 61(1). If the asset is held for the production of rents under section 212, the depreciation of such asset is allowed as a deduction from gross income under section 62(5). For our purposes here, all other expenses not covered within this litany are personal and are not deductible under section 262. For 1985, two items listed above, $ 1,253.14 interest and $ 52.44 real estate taxes, were disallowed by respondent as farm expenses. Respondent concedes these two items were paid, but contends they are deductible from adjusted gross income, as itemized deductions, rather than as deductions from gross income. Petitioner testified the interest was paid on a 1981 Federal income tax deficiency which arose over a redetermination of his recognized gain from the sale of a farm. Because the deficiency arose from a "farm transaction," he contends the interest paid on the deficiency was farm interest. The Court disagrees. The indebtedness on which the interest was paid was clearly not incurred in the trade or business of farming. The indebtedness, *370 the tax deficiency, was a personal debt, totally unrelated to petitioner's doing business as a farmer. As to the real estate taxes, of the total amount of $ 118.87 paid, respondent determined $ 66.43 was allocable to the farm and allowed that amount as a Schedule F deduction, but determined $ 52.44 was allocable to petitioner's residence, deductible as an itemized deduction. Petitioner presented no evidence to rebut respondent's determination. As to both items, respondent is sustained. The 1984 $ 300 item for labor represents a deduction for payments to a Ms. Joann England. Respondent disallowed this item on the basis that the payments were not related to the trade or business of farming. Petitioner established that he made payments to Ms. England; however, the circumstances under which he made these payments are highly questionable to support a deduction for tax purposes. He testified Ms. England "was kind of a girlfriend that kept books for me." He acknowledged having a social relationship with her, an that he paid numerous doctor bills for her; however, he contends the $ 300 represented payment for bookkeeping services. The Court finds that the social relationship between *371 petitioner and Ms. England far outshadowed any business relationship between them. The Court is satisfied that, if any payments were made to Ms. England for services, the services were not related to petitioner's trade or business of farming. [3]
The 1984 depreciation claimed for a parking area, a driveway, and three ponds was disallowed by respondent for the reason that the facilities were not used in the trade or business of farming, and the assets did not have a depreciable basis. All were part of the Doniphan, Missouri, farm when it was acquired by petitioner. The parking area and driveway were gravelled. Petitioner acknowledged that both were used by his personal vehicles. The Court is unable to determine from the record to what extent, it at all, the driveway and parking lot were used in the farming operation. Respondent, therefore, is sustained in disallowing the depreciation on the *372 parking area and driveway. As to the ponds, petitioner did not establish what use these ponds had to his farming operation. He had a water well which provided water to his cattle and on which depreciation was allowed to the extent of its use in his farming operation. Petitioner testifies that the ponds required periodic maintenance or repairs; however, that begs the question: Repairs or maintenance expenses would be deductible only if the ponds constituted assets used in the trade or business of farming. Section 162(a). Respondent, therefore, is sustained on this adjustment. Petitioner also claimed depreciation in 1984 of $ 18.75 on five fruit trees and $ 4 on a dog, which respondent disallowed. Petitioner acknowledged he personally consumed the fruit from the trees and reported no income from sales of any fruit. As to the dog, a black and tan hound, petitioner contends he held the dog for breeding purposes. However, no evidence was adduced to establish that dog breeding was a part of petitioner's farming operation. Both adjustments, therefore, are sustained. The $ 51.87 feed item, in 1984, represented feed for another dog, an Australian Blue Heeler. Petitioner testified *373 he used this dog to "round up" his cattle. He claimed the dog was so good that he rounded up the cattle even when it was not necessary. The Court sustains respondent on this item. The fact that the dog was not controlled establishes to the Court's satisfaction that petitioner kept the animal as a pet. With respect to all other items above, respondent is sustained. Petitioner failed to establish that any of these items were ordinary and necessary expenses incurred in his trade or business of farming. Some of the items were personal items, some of the amounts claimed were duplicative, others were admittedly estimated, and no substantiation, in any event, was provided. (5) Moving Expenses, 1984
On his 1984 return, petitioner claimed a deduction of $ 3,654.20 for moving expenses, occasioned by his retirement from General Motors Corporation in 1983, the sale of his home at Bowling Green, Kentucky, and his move to Doniphan, Missouri, where he purchased a farm and undertook a cattle operation. Respondent disallowed the deduction for lack of substantiation and, alternatively, for the reason that petitioner was not eligible to claim a moving expense deduction, since he was *374 a "gentleman farmer" at his new residence. Section 217(a) allows a deduction for moving expenses paid or incurred during the taxable year in connection with the commencement of work by the taxpayer as an employee or as a self-employed individual at a new principal place of work. Section 217(c)(2)(B) requires, during the 24-month period immediately following the arrival of the taxpayer in the general location of his new principal place of work, that the taxpayer perform services, if self-employed, on a full-time basis within certain time periods not relevant to our discussion here. Under section 1.217-2(c)(4)(iv), Income Tax Regs., as to a self-employed individual, whether the services performed are on a full-time basis depends on the practices of the trade or business in the geographic area in which the taxpayer works. Section 1.217-2(f)(1), Income Tax Regs., in defining "self-employed individual," provides that the term "does not include the semiretired, part-time students, or other similarly situated taxpayers who work only a few hours each week." On the record, the Court finds, considering all the facts and circumstances, that petitioner qualified as a self-employed individual. *375 He undertook a farming business which respondent has not determined was "not engaged in for profit" under section 183; petitioner devoted his full time to this business, and the facts do not otherwise establish that section 217 or the regulations cited would preclude petitioner from qualifying for the moving expense deduction. As to substantiation, the following amounts were claimed on petitioner's return: $   204.20
--
Transportion expenses in moving
household goods and personal  effects
450.00
--
Travel, meal, and lodging expenses
in moving from old to new  residence
$   721.00
- Pre-move travel, meal, and
lodging expenses in looking
for a new residence after getting job
958.94
- Total
2,319.00
- Expenses of
selling old residence
41.00
- Expenses of
buying new residence
$ 3,318.94
- Total
3,000.0O
-
Amount claimed pursuant to the
limitation of sec. 217(b)(3)(A)
$ 3,654.20
-
Total claimed moving expense deduction
At trial, respondent conceded the substantiation of $ 2,319 and $ 41, respectively, as *376 expenses of selling the old and buying the new residences. Petitioner had no receipts to substantiate any of the other items at issue. He testified he made four trips between Bowling Green, Kentucky, and Doniphan, Missouri, a distance of 300 miles one-way. After his move, but prior to moving to the farm, he lived with his brother and paid no rent. The Court is satisfied from the record that petitioner incurred moving expenses and, using our best judgment under Cohan v. Commissioner, supra, determines the contested items above, as follows: Transportation expenses in moving household goods and effects
$ 204.00
Travel, meal, and lodging expenses in moving from old to
new residence
$ 300.00
Pre-move travel, meal, and lodging expenses in looking for a
new residence after getting job
$ 400.00
Temporary living expenses in new location
-0- (6) Investment Credit, 1984 and 1985
For 1984, petitioner claimed the credit on a garden tiller. At trial, petitioner conceded depreciation on the tiller and the investment credit thereon, acknowledging the tiller was used for personal purposes. At issue, therefore, *377 is the investment credit on the dog. A general business credit is allowed under section 38, one component of which is the investment credit. Under the flush language of section 48(a), property qualifying for the investment credit includes only recovery property within the meaning of section 168, and any other property to which depreciation is allowable and having a useful life of three years or more. Having determined that the dog was not used in petitioner's trade or business (or held for the production of income) and, therefore, was not subject to an allowance for depreciation, it follows that petitioner was not entitled to the investment credit. Respondent's determination is sustained. (7) Gain on Sale of Residence, 1984
In the notice of deficiency, respondent determined that a gain of $ 1,443.53 realized by petitioner on the sale of his Bowling Green, Kentucky, residence in 1984 was taxable as a long term capital gain. At trial, respondent determined the gain realized was $ 18,517.04 instead of $ 1,443.53 and that, since petitioner timely purchased another residence at Doniphan, Missouri, $ 6,349.88 of the gain was deferred under section 1034, but $ 12,167.06 was *378 taxable. Respondent amended the answer to increase the deficiency as a result of this additional gain. Section 1034(a) allows a rollover or deferment of gain if a taxpayer sells his principal residence and, within a period of two years beginning before the date of sale and ending two years after the sale, purchases another residence. The realized gain on the sale of the old residence is recognized to the extent that the adjusted sales price of the old residence exceeds the cost of the new residence. Section 1034(b)(1) defines "adjusted sales price" as the amount realized on the old residence reduced by expenses for work performed on it to assist its sale. Under section 1034(e), the cost or basis of the new residence is reduced by the amount of the gain which is not recognized. In 1981, petitioner sold his residence at Silex, Missouri, and the parties agree that the gain realized on that sale was deferred by virtue of petitioner's purchase of a principal residence at Bowling Green, Kentucky, in the same year. The amount of the gain is not in dispute nor do the parties dispute the cost of the Bowling Green residence, the improvements thereon, and the reduction in its basis *379 by the amount of the gain deferred from sale of the Silex residence. In early 1984, petitioner sold the Bowling Green residence and, in June 1984, purchased the Doniphan, Missouri, residence. The parties disagree over the amount of gain realized from sale of the Bowling Green residence which is deferrable under section 1034(c). Petitioner contends the entire gain is deferrable, whereas respondent contents $ 6,349.98 is deferrable, and $ 12,167.06 is taxable. Petitioner further contends that, within two years from the date he sold his Bowling Green residence, he added improvements to the Doniphan, Missouri, residence and, under Section 1034(c)(2), these improvements increase the cost of his new residence and, thus, offset any recognized gain from sale of the old residence. Since respondent moved to amend the answer to increase the gain recognized from petitioner's sale of his Bowling Green residence, the burden of proof with respect to such new matter is on respondent. Section 142(a). The Court has reviewed a written analysis submitted by petitioner at trial setting out his position in contending that the entire gain realized from sale of the Bowling Green property was deferred *380 as the result of his purchase of the Doniphan, Missouri, residence. The Court notes that, when petitioner sold his Silex, Missouri, residence, the cost price of the new residence (Bowling Green, Kentucky) exceeded the adjusted sales price of the Silex, Missouri, residence. Thus, the total gain realized from sale of the Silex, Missouri, residence was deferred under section 1034(a). Petitioner, however, in his analysis, overlooked the fact that, when he sold his Bowling Green residence, the cost of the Doniphan, Missouri, residence was considerably less than the adjusted sales price of the Bowling Green residence, thus calling into play the limitation provision of section 1034(a) which provides that gain is recognizable to the extent the adjusted sales price of the old residence exceeds the cost of the new residence. Petitioner did not figure this in his analysis. However, the court is in agreement with petitioner that he added timely improvements to the Doniphan, Missouri, residence, increasing its cost and reducing the recognized gain determined by respondent. It is the Court's finding, therefore, that respondent has sustained his burden of proof in establishing that petitioner *381 realized a gain in excess of the amount determined in the notice of deficiency, and that the adjusted sales price of the old residence exceeded the cost of the new residence. The Court finds, however, that petitioner added timely improvements to the cost of the new residence which would reduce, but not totally offset, the recognized gain. The following tables constitute the Court's findings: $ 36,285.00
--
Selling price of Silex, MO residence
1,601.46
--
Less costs of sale
$ 34,683.54
--
Amount realized
11,966.50
--
Less adjusted basis of Silex, Mo residence
$ 22,717.04
--
Gain realized on sale of Silex, MO residence
$ 37,041.00
--
Cost of Bowling Green, KY residence
840.00
--
Cost of improvements to Bowling Green residence
$ 37,881.00
--
Adjusted cost of Bowling Green residence
22,717.04
--
Less gain deferred under sec.1034(a) from
sale of Silex residence
$ 15,163.96
--
Adjusted basis of Bowling Green residence
$ 36,000.00
--
Amount realized from sale of Bowling Green residence
15,163.96
--
Less adjusted basis of Bowling Green residence
$ 20,836.04
--
Gain realized on sale of Bowling Green residence
Cost of Doniphan, MO residence:
$ 15,242.76
--
House and one acre
750.00
--
One-half of water well
2,798.31
--
Improvements to house
$ 18,791,07
--
Cost of new residence (Excludes costs attributable to the
remaining 19 acres and improvements, as agreed by
the parties.)
5,181.18
--
Plus improvements to new residence under sec. 1034(c)(2)
$ 23,972.25
--
Cost of Doniphan, MO residence with improvements
Amount by which adjusted sales price of old residence exceeds cost of new
residence:
$ 36,000.00
--
Amount realized from sale of Bowling Green residence
340.00
--
Less fixing-up expenses for sale
$ 35,660.00
--
Adjusted sales price, Bowling Green (old) residence
23,972.25
--
Cost of Doniphan, MO (new) residence
$ 11,687.75
--
Gain on sale of old residence to be recognized under
sec. 1034(a)
Allocation of recognized and deferred gain from sale of Bowling Green
residence:
$ 11,687.75
--
Recognized gain under sec. 1034(a)
9,148.29
--
Gain deferred under sec. 1034(a)
$ 20,836.04
--
Total gain realized on sale of Bowling Green residence
Adjusted basis of Doniphan, MO residence:
$ 23,972.25
--
Cost, including improvements
9,148.29
--
Less gain deferred from sale of Bowling Green residence
$ 14,823.96
--
Adjusted basis of Doniphan residence
*382 As shown above, petitioner must recognize a long-term capital gain of $ 11,687.75 on the sale of his Bowling Green residence in 1984. The adjustment by respondent is accordingly redetermined. (8) Schedule F, Farm Income, 1985
On Schedule D of his 1985 return, petitioner reported long-term capital gain of $ 259.98 from the sale of cattle. On a Form 4797, Gains and Losses From Sales or Exchanges of Assets Used in a Trade or Business and Involuntary Conversions, petitioner reported gain of $ 996.23. Respondent adjusted these two items by attributing both as Schedule F, Farm Income. [4] In addition, respondent determined that petitioner failed to report other income from his farming business so that the adjustment increased petitioner's farm income by the amount of $ 3,177.84. At trial, respondent reduced this adjustment to $ 1,389.80, comprised of the following: *383 $  259.98
--
Schedule D gains determined to be ordinary,
Schedule F, income
996.23
--
Form 4797 income determined to be ordinary,
Schedule F, income
133.59
--
Unreported income from the sale of two goats
and cattle
$ 1,389.80
--
Additional Schedule F income
Petitioner presented no evidence to rebut respondent's determination of the unreported $ 133.59 income from the sale of goats and cattle. Respondent, therefore, is sustained on this item. The two other items involved sales of cattle. Petitioner held out his farming activity as a cattle business. He testified that he bought, sold,, and raised cattle, and he considered all of his herd available for sale at any time. He argued, however, that the cattle sold and reported on Schedule D were all held over six months and until such time as he decided what to do with them, such cattle were capital assets. Thus, he contends, the gain reported on Schedule D is subject to the 60 percent capital gain deduction under section 1202(a). Under section 1221, a capital asset does not include either property held by a taxpayer primarily for sale to customers in the ordinary course *384 of his trade or business or property sued in the taxpayer's trade or business which is subject to an allowance for depreciation. On this record, petitioner failed to sustain his burden of establishing that the cattle reported on Schedule D and Form 4797 were not held primarily for sale to customers in the ordinary course of business or were depreciable assets used in petitioner's trade or business or were property used in the trade or business within the meaning of 1231. Respondent, therefore, is sustained on these two items. (9) The Additions to Tax, 1982, 1984, 1985
Section 6653(a)(1) provides that "if any part of any underpayment * * * is due to negligence or intentional disregard of rules and regulations * * *, there shall be added to the tax an amount equal to 5% of the underpayment." Negligence is the lack of due car or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner,85 T.C. 934, 947 (1985); Barkley v. Commissioner,T.C. Memo 1987-577. Section 6653(a)(2) provides for an addition to the tax, in addition to the five percent amount under section 6653(a)(1), of an amount *385 equal to 50 percent of the interest on the portion of the underpayment attributable to negligence. Petitioner failed to sustain his burden with respect to the additions to tax under section 6653(a)(1). The record establishes petitioner's callous disregard of the tax laws, in for example, claiming an arbitrary two percent of adjusted gross income as a charitable contribution deduction ostensibly as a "catch all" without any discernible evidence to support the amounts resulting from the use of such formula, or in making estimates of other deductions when he well knew that such amounts could not be substantiated. Respondent, therefore, is sustained with respect to the determination under section 6653(a)(1). With respect to the addition to tax under section 6653(a)(2), the Court finds that the underpayment of tax resulting from the computation of gain resulting from the sale of petitioner's residence and the moving expenses, both for 1984, are not due to the negligence or intentional disregard of rules or regulations. Consequently, with respect to these two adjustments, the addition to tax under section 6653(a)(2) is not applicable, and petitioner is sustained. As to all other *386 adjustments, for all years, respondent is sustained. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure. ↩
*. 50% of the interest due on the deficiency. ↩
2. The concession by respondent are: 1982: Gain on sale of farm, $ 2,384.40; 1985: Rental expenses, $ 1,220.07; Schedule F, Feed expenses, $ 1,543.14; Schedule F, Repairs, $ 1,258.94; Schedule F, Supplies, $ 396.21; Schedule F, Real estate taxes, R.1 school taxes, $ 21; Other real estate taxes, $ 66.43; Schedule F, Utilities, $ 327.93; Schedule F, Extra insurance, $ 210.03; Schedule F, Licenses (inspection fees), $ 4; and General business credit on 2 cattle trailers and 1/2 converted van. Petitioner's concessions: Political contribution credits for 1982, 1984, and 1985; 1982: Home mortgage interest, $ 40.76; and State income tax refund, $ 123.19; 1984: Depreciation on chain saw, $ 21.87; Depreciation on water well, $ 112.50; Investment credit on water well and chain saw; 1985:↩ Schedule F, Seeds, $ 15; Schedule F, License fees, $ 4.50; Schedule F, Depreciation on garden tiller, $ 156.20; and investment credit on garden tiller. 3. The Court's finding was influenced to some extent by petitioner's unsolicited acknowledgement that, during the audit, when the agent inquired who Ms. England was, petitioner denied any knowledge of her for the reason "the word 'England' around my house starts a pretty good fight." ↩
4. On Schedule D, petitioner claimed the 60 percent long-term capital gain deduction, which respondent disallowed by attributing the entire $ 259.98 as ordinary income under Schedule F. In Form 4797, petitioner reported sales of cattle held less than six months, the total gains of which amounted to $ 996.23. ↩